IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EMMA B., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:23-CV-1523-BK |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
|     DEFENDANT. | § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, the Court now considers this appeal of the denial of Plaintiff's application for social security disability benefits. For the reasons below, the Commissioner's decision is **AFFIRMED**.

**I. BACKGROUND**

    *A. Procedural History*

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act (the "Act") and supplemental security income under Title XVI of the Act. *See generally* Doc. 1. In April 2021, Plaintiff concurrently filed applications for the same, alleging a disability onset date of May 1, 2019. Doc. 16-1 at 116-21. Her claim was denied administratively, and she now appeals to this Court under 42 U.S.C. § 405(g). Doc. 16-1 at 116-21.

    *B. Factual Background*

Plaintiff was 46 years old at the time of her alleged disability onset, had a high school education, and had past relevant work as a furniture salesperson. Doc. 16-1 at 33-34.

Plaintiff saw Family Nurse Practitioner Victoria Wahlenmaier for several medical issues in 2020 and 2021, including whole-body pain and fibromyalgia. Doc. 16-1 at 355-56. Plaintiff

also saw Dr. Sonny Patel for widespread pain, fatigue, memory changes, anxiety, depression, and PTSD.  Doc. 16-1 at 574.  Upon examination, Dr. Patel confirmed that Plaintiff suffered from anxiety, depression, and PTSD—all of which purportedly stemmed from an undisclosed traumatic event she experienced in 2004—as well as fibromyalgia, chronic fatigue, and neuropathy.  Doc. 16-1 at 574-76.  In 2022, Plaintiff saw another physician, Dr. Wenbao Wang, for several conditions, including chronic pain.  Doc. 16-1 at 585.  He—as well as other medical providers Plaintiff consulted—specifically advised her to continue her anti-depressant, Cymbalta.  Doc. 16-1 at 590; *see also* Doc. 16-1 at 590; Doc. 16-1 at 596; Doc. 16-1 at 601.

### C. ALJ Hearing

The ALJ held a hearing on December 6, 2022.  Doc. 16-1 at 42.  Plaintiff testified that she has a high school degree, no problems reading and writing, and in fact enjoys reading more than watching TV or movies.  Doc. 16-1 at 46-47.  She testified that she was not seeing anyone for counseling, therapy, or "for any mental health problems."  Doc. 16 at 47.  Plaintiff also stated that she was, however, medicated for her mental health issues, and her medication "do[es] help" her "feel that [her] mental health symptoms are better controlled."  Doc. 16-1 at 47.  She stated that she suffers from depression "when [she's] not on the depression medication."  Doc. 16-1 at 48.  She also testified that she suffers from tremors and stomach pain without her anxiety medication.  Doc. 16-1 at 48.

Plaintiff further testified that she suffers from significant pain across her body and that her pain, fatigue, and depression are the key things disabling her ability to work.  Doc. 16-1 at 49.  She also testified that, according to her doctors, her difficulty remembering stems from fibromyalgia, not any mental health issues, and it is better or worse on different days.  Doc. 16-1 at 50.  Plaintiff averred that she has difficulty walking and falls frequently, but she uses a cane or walker to help her move and will "absolutely" "take one of those with her" when she leaves her

house. Doc. 16-1 at 51-52. She explained that she suffers from anemia and nausea but is also receiving iron supplements and trying to consume simpler, more easily digestible foods. Doc. 16-1 at 54-56. According to Plaintiff, she cannot stand for much longer than a few minutes before having to rest, Doc. 16-1 at 58-59, and her anxiety is triggered by being around new people or other people. Doc. 16 at 62.

Vocational Expert ("VE") Valeria Borja also testified. Doc. 16-1 at 65-71. The VE opined that a person with the hypothetical restrictions proffered by the ALJ would be able to "actually perform[]" her past work. Doc. 16-1 at 67. She further testified that a person with the hypothetical restrictions proffered by the ALJ would still be able to work as a systems surveillance monitor, an election clerk, or an operator—jobs available in great numbers in the national economy. Doc. 16-1 at 67-68.

### D. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2024, and had not engaged in substantial gainful activity since her alleged disability onset date. Doc. 16-1 at 26. The ALJ further determined that Plaintiff suffered severe impairments from fibromyalgia, neuropathy, anemia, osteoarthritis of the left knee, tremors, chronic pain syndrome, anxiety, and PTSD, but that these impairments—neither singularly nor in combination—met or equaled any Listed Impairment. Doc. 16-1 at 27-29. The ALJ found that Plaintiff—

> has the residual functional capacity to lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk 2 hours of an 8-hour workday, and sit 6 hours of an 8-hour workday. Claimant can occasionally handle and finger with both hands. Claimant can never climb ladders, ropes, or scaffolds, but can frequently climb ramps and stairs. Claimant can occasionally kneel, crouch, and crawl, and can frequently balance and stoop. Claimant must avoid unprotected heights and dangerous machinery. Mentally, claimant can understand, remember, and carry out detailed but not complex instructions with no fast-paced production requirements such as an assembly line. Claimant can respond appropriately to changes in a routine work setting.

Doc. 61-1 at 30.  The ALJ further found that, while Plaintiff did not have the residual functional capacity ("RFC") to perform her past work, there were still a significant number of jobs in the national economy that she was capable of performing.  Doc. 16-1 at 30-35. The ALJ thus concluded that Plaintiff was not disabled under the Act.  Doc. 16-1 at 35.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner considers (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work.  *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the burden on the first four steps.  *Id.* (citation omitted).  The burden then shifts to the Commissioner to "prove the claimant's employability."  *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence."  *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quotation marks and citation omitted).  The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's."  *Id.*  A finding that substantial evidence does not exist "is appropriate only

4

if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted).

### III. ANALYSIS

A. *The ALJ Was Properly Appointed.*

Plaintiff argues, *inter alia*, that the ALJ who presided over Plaintiff's administrative proceedings "was not properly appointed" by then-Acting Commissioner of the Social Security Administration Nancy Berryhill and, consequently, "lacked authority to hear and decide" this case. Doc. 21 at 15-20. Plaintiff's argument is foreclosed in this circuit. *See Seago v. O'Malley*, 91 F.4th 386, 390 (5th Cir. 2024) ("[W]e agree with our sister circuits and conclude that Berryhill was lawfully serving as Acting SSA Commissioner . . . when she ratified the appointments of all SSA ALJs in July 2018."); *Miller v. O'Malley*, No. 23-10790, 2024 WL 1609397, at *1 (5th Cir. Apr. 10, 2024) (same).

B. *The ALJ's Findings Are Supported by Substantial Evidence.*

Plaintiff argues that the ALJ erred because, while specifically finding Barrera's anxiety and posttraumatic stress disorder (PTSD) were severe impairments that "could be expected to interfere with the ability to perform basic work activities," the record nevertheless was devoid of any medical opinion "on Barrera's mental functional capacity." Doc. 21 at 11-15. Defendant argues that medical opinions are not required by the ALJ and that the ALJ findings were otherwise support by substantial evidence. Doc. 24 at 10-15.

The RFC is an ALJ's assessment, based on all relevant evidence, of a claimant's ability to work, despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). Stated differently, it is the most a claimant can do, notwithstanding her physical and mental limitations. *Id.* The RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to

5

work." *Hollis v. Bowen*, 837 F. 2d 1378, 1386-87 (5th Cir. 1988) (per curiam). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam) (quoting SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (holding that the RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence).

Under the current regulations, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Nor must an ALJ's RFC assessment "mirror or match a medical opinion." *Robert D.D. v. Kijakazi*, No. 3:21-CV-3164-C-BN, 2022 WL 16935248, at *4 (N.D. Tex. Oct. 31, 2022) (Horan, J.) (quoting *Carson v. Comm'r of Soc. Sec.*, 2022 WL 2525438, at *7 (E.D. Tex. May 25, 2022)), *adopted by*, 2022 WL 16927799 (N.D. Tex. Nov. 14, 2022) (Cummings, J.). Further, the absence of a medical opinion " 'describing the types of work that the applicant is still capable of performing . . . does not, in itself, make the record incomplete.' " *Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *3 (5th Cir. June 14, 2023) (per curiam) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *see also Myers v. Kijakazi*, No. 20-CV-445, 2021 WL 3012838, at *4 (W.D. Tex. July 16, 2021), *adopted by*, 2021 WL 4025993 (Sept. 3, 2021) (explaining that the law does not require a positive statement or positive evidence from a medical source indicating a claimant can perform the demands included in the RFC). Such opinions are simply one category of evidence that the ALJ considers in assessing a claimant's RFC. *Id.* (citing 20 C.F.R. § 404.1513); *see also* 20 C.F.R. § 416.913 (categories of evidence for Title XVI applications). "[W]here no medical statement has

6

been provided, [the Court's] inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

Plaintiff relies almost exclusively on *Ripley* for the proposition that "the ALJ may not derive the RFC without support from a medical opinion." *See* Doc. 21 at 5. But Plaintiff mischaracterizes the *Ripley* holding. *See Ripley*, 67 F.3d at 557 ("Usually, the ALJ should request a medical source statement . . . . The absence of such a statement, however, does not, in itself, make the record incomplete."). Indeed, the Court in *Ripley* found that, unlike here, the entire record was devoid of evidence supporting the ALJ's findings regarding the claimant's ability to work. *Ripley*, 67 F.3d at 557-58.

In contrast to *Ripley*, the ALJ in the case *sub judice* relied on other record evidence for its ruling that Plaintiff's mental health issues still permit her to work, including Plaintiff's own testimony regarding how her mental impairments impacted her activities of daily living. Regarding her mental health issues, Plaintiff testified that consistently taking her medication gives her "better control[]" over all of her "mental health symptoms." Doc. 16-1 at 47. She also indicated no problems reading and writing, emphasizing her enjoyment of reading above other activities. Doc. 16-1 at 46-47. As Plaintiff indicated and her medical records confirm, multiple medical providers recommended psychiatric medication to treat her depression. *See, e.g.,* Doc. 16-1 at 590; Doc. 16-1 at 590; Doc. 16-1 at 596; Doc. 16-1 at 601. And while Plaintiff testified to the mental health symptoms she suffered from, she also said that these symptoms occur "when [she's] ***not on*** the depression medication." Doc. 16-1 at 48 (emphasis added).

The ALJ was entitled to rely upon Plaintiff's testimony that her mental health symptoms are largely controlled by medication and that, conversely, her suffering stems from failing to take the medication prescribed. *See* 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore

7

your ability to work."); s*ee, e.g.*, *Mitchell v. Colvin*, No. 4:15-cv-0043, 2015 WL 7583097, at *8 (S.D. Tex. Nov. 25, 2015) ("[T]he ALJ's holding was supported by substantial evidence, including . . . Plaintiff's own statements indicating that her schizoaffective symptoms are controlled when she is compliant with her medications.").[1]

## C. CONCLUSION

After careful review of the record evidence as a whole under the "exceedingly deferential" standard of review required by law, the Court concludes that ALJ's RFC was supported by substantial evidence.  Accordingly, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on September 13, 2024.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[1] There are situations where a claimant has received social security benefits without taking adequate medication, but that has been when "non-compliance" itself "is the result of a mental impairment." *Brashears v. Apfel*, 73 F. Supp. 2d 648, 651 (W.D. La. 1999) (collecting cases). Plaintiff, however, has made no such argument here, nor does the record support such a finding.